

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRADING TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | No. 05 C 4120 |
| GL CONSULTANTS, INC., and GL TRADE SA, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Trading Technologies International, Inc. ("TT") and GL Consultants, Inc. and GL Trade SA ("GL") are once again engaged in a discovery dispute. Plaintiff TT is seeking supplemental responses to interrogatories related to GL's salespeople and customers, GL's electronic archive of trading application interfaces from 1998 to 2002, a physical inspection of the original repository of GL's source code, and a de-designation of GL Tradepad's source code from the highest tier of the protective order. TT further requests that this court strike any prior art information produced by GL after February 16, 2007, as untimely. TT's brief suggests that GL's last minute production is a "dilatory tactic" that has been orchestrated to prejudice TT in its response to the defendants' invalidity contentions (TT's reply at 2).[1] GL contends that "[t]o the extent TT's requests are understood and not overly burdensome, the requests have either been satisfied or will be satisfied with cooperation from TT" (GL's

---

[1] The defendants to which we refer are eSpeed, Inc., ITSEcco Holdings Limited, Ecco LLC, and Ecco Ware Limited (collectively "eSpeed"); GL; CGQT, LLC and CQG, Inc. (collectively "CQG"); FuturePath Trading, LLC ("FuturePath"); and Rosenthal Collins Group, Inc. ("RCG"). Although RCG brought a declaratory judgment action against TT, and therefore is technically a plaintiff, we refer to RCG as a defendant for purposes of this order.

response at 2).

At the outset, we reiterate some of the points regarding discovery that we have stressed throughout this complicated and contentious litigation. First, parties should err on the side of over-production; relevance should be argued sparingly. Second, counsel are officers of the court and their word is generally sufficient. Third, there will always be additional persons to interview, additional documents to discover, and alleged prior art to be found; we must, however, put an end to discovery at some point. And finally, due to the court's and parties' limited resources, discovery related to the eSpeed trial is our current priority. With such guidelines in mind, we address the current dispute.

First, we find that GL must update its responses to interrogatory numbers 5, 17 and 18, to the extent that it knows of any additional information. Specifically, GL must supplement its list of customers and salespeople within seven days. GL must also complete its search for information on meetings between Aspire Trading and GL from 1998 to 2000 in the next seven days. To the extent GL does not produce names of salespeople or customers, including communications with such customers, the defendants will be prohibited from relying on later-produced customers with regard to the eSpeed litigation. Should such discovery arise later, it may be admissible for purposes of the GL/FuturePath litigation.[2]

Second, TT asks that GL be compelled to produce a full production of source code from 1998 to 2002 having a "dynamic vertical price display," regardless of its trade name. GL asserts that it has already produced its daily archives beginning in June 1998 and continuing

---

[2] TT requests that the court require GL to outline the steps it has taken regarding searching its sales offices for information related to any efforts to sell GL's products from 1998 to 2002. As noted above, we must trust the word of GL's counsel that it has conducted a thorough and sufficient search. We will not require an outline of the ways in which it searched.

until June 2000. GL further argues that because the critical date for the patents-in-suit is March 2, 1999, any information beyond March 2000, is irrelevant for validity. At the outset, we note that GL has recently supported eSpeed's motion for summary judgment, arguing that the patents-in-suit "are entitled to priority dates no earlier than the filing of their common non-provisional parent application of June 9, 2000, rather than the March 2, 2000 filing date of the provisional application" (GL's mem. in support of eSpeed's mo. for sum.jdgmt on the priority date for the '132 and '304 patents, at 2). GL cannot now claim that the priority date is March 2000. Because GL seeks to define TT's priority date as a later date, it must produce source code, executables, installation files, and archives though the end of 2000. Such a production must also include the Morgane and Merlin servers identified by Laurent Havard, so long as GL can access them.

TT argues that source code and archives from after the critical date are relevant to rebut defendants' claim of obviousness. Essentially, TT argues that GL's QuickTrade, the software TT alleges infringes on the patents-in-suit, is relevant to TT's non-obviousness argument because the evolution of the software from Tradepad to QuickTrade will show that Tradepad was a failed experiment, and therefore, TT's patented invention was not obvious. Essentially, TT suggests that even though there was a need in the futures trading industry for an updated trading screen, those of ordinary skill in the art were unable to create something similar to TT's patents. Thus, GL was only able to develop a successful new product (QuickTrade) once TT's product was made available.

The Patent Act forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill

in the art to which said subject matter pertains." 35 U.S.C. § 103(a). TT is correct that evidence of failure of others to develop the product is relevant in analysis of obviousness. KSR Int'l Co. v. Teleflex Inc., 127 S.Ct.1727, 1729-30 (2007) (citing Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17018 (1966)). Obviousness analysis, however, is centered on prior art, which is defined as "technology already available to the public." OddzOn Products, Inc. v. Just Toys, Inc., 122 F.3d 1396, 1402 (Fed.Cir.1997) (citing Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1453 (Fed.Cir.1984)). Sections 102(a)(e) and (g) of the Patent Act, which deal with events prior to the applicant's invention date, and Section 102(b), which deals with events more than one year prior to the U.S. patent application date, are considered the "prior art" sections of the Patent Act. *Id.* (citing In re Bass, 474 F.2d 1276 (C.C.P.A.1973)). So, while TT may be correct that the alleged failure of Tradepad as related to the alleged success of QuickTrade may be relevant to obviousness analysis, the key questions are centered on events that occurred prior to the invention or critical date. Therefore, we find that production of GL's source code and archives through the end of December 2000 is sufficient.

Third, TT seeks access to the original repository of GL's source code. The parties argue who is at fault for not yet allowing such access. We decline to get involved in such a dispute. GL should grant TT access to the original repositories for the source code and archives outlined above.[3] Such access is not contingent on GL's access to TT's repositories. Therefore, at this time we deny GL's cross-motion for inspection of the original repository of TT's X_Trader and MD Trader source code. Unlike access to GL's repositories, access to

---

[3] Access in this situation is defined by GL as access to the original CDs in New York and the recently-produced GL PC and servers in Chicago (GL's response, at 8).

TT's repositories is not relevant to the eSpeed litigation.[4] Thus, we decline to allow GL access at this point.

Next, TT asks us to de-designate the source code of GL Tradepad from the highest tier of the protective order. That designation, "HIGHLY CONFIDENTIAL – PATENT PROSECUTION," is defined as "information that (1) meets the definition of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material and (2) is particularly sensitive product design information which is of the type that can be included in a patent application and form the basis, or part of the basis, for a patent claim or claims" (TT's brief, exh. J, at 4). "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material is defined as:

> [I]nformation entitled to protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure, the disclosure of which the Disclosing Party in good faith believes would cause harm to the competitive position of the Disclosing Party. Such information may include:
>
>> a. confidential financial information, such as, without limitation, revenue from sales/licenses of products, revenue or income arrangements with traders or other customers, net and gross revenue, profit and loss statements, including forecasts and plans;
>> b. trade secrets, as defined by the Uniform Trade Secrets Act; customer and/or trader lists and competitive market information;
>> c. confidential technical information; and
>> d. agreements with third parties containing sensitive business information.

(*id.*, at 3-4). GL asserts that the source code for its Tradepad product should be protected as "highly confidential – patent prosecution" because it is "technical information" and could be incorporated into a new, patentable product. TT disagrees, arguing that because the Tradepad product was long ago made public, the source code on which it relies should not be protected under the highest tier of the protective order. We agree with GL. Just because the

---

[4]TT has represented that eSpeed has declined to seek access to TT's repositories (TT's reply, at 8).

end product (the Tradepad module) is public information does not mean that the means by which GL developed the module should be public. GL may choose to use a portion of the source code, in combination with additional source code, to create a patentable design in the future. TT will gain access to the source code within the boundaries of this litigation. Should TT wish any attorney to view the source code, that attorney must simply make the election to refrain from prosecuting related patents for a period of time. We decline to de-designate GL's source code.

Finally, TT asks us to strike any prior art information provided by GL after February 16, 2007. We decline to do so at this time. We have long recognized that GL Tradepad is relevant prior art in this action, and fail to find that the delay in production is the result of calculated litigation tactics. We do remind all parties, however, that as the end of discovery nears, they should produce any remaining discovery with the upmost speed and efficiency.

For the reasons stated herein, we deny in part TT's motion to compel and deny GL's cross-motion for inspection.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 16, 2007.