UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRADING TECHNOLOGIE S                  )
INTERNATIONAL, INC.,                   )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )      Nos. 05 C 4120, 05 C 5164
                                       )
GL CONSULTANTS, INC., *et al.,*        )
                                       )      Magistrate Judge Sidney I. Schenkier
            Defendants.                )
                                       )
_____    )
                                       )
TRADING TECHNOLOGIES                   )
INTERNATIONAL, INC.,                   )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )
                                       )
FUTUREPATH TRADING, LLC,               )
                                       )
            Defendant.                 )

## MEMORANDUM OPINION AND ORDER

Except for certain limited matters, non-retained expert fact discovery in this patent case closed on January 31, 2012. In an order dated February 3, 2012, the Court reminded the parties that this phase of discovery had concluded, and urged them to "work to resolve any disputes concerning tag end discovery with that in mind" (doc. # 776: 02/03/13 Order at 2).

Over the next year, the parties used the existence of these "tag end" matters as a lever to raise (and sometimes re-raise) numerous discovery disputes. During hearings on March 14, 2012, April 16, 2012, June 1, 2012, August 10, 2012, October 26, 2012, January 22, 2013, and February 26, 2103, the Court addressed scores of "agenda items" raised by the parties in an effort

to give them guidance and to enable them to resolve various festering disputes. When the parties were unable to resolve their disputes and engaged in motion practice, the Court promptly ruled. On March 14, 2012, the Court issued a Memorandum Opinion and Order resolving a dispute over the assertion by a non-party of the attorney-client privilege (doc. # 821). In addition, the Court ruled on three motions to compel during a hearing on August 10, 2012 (doc. # 1047); one motion to compel during a hearing on October 26, 2012 (doc. # 1088); two motions to compel during a hearing on January 22, 2013 (doc. # 1132); and two more motions to compel during a hearing on February 26, 2013 (doc. # 1164).

Having decided that more than one year should be enough to finish off "tag ends" of discovery (even in complex patent litigation), during a telephone status hearing on March 7, 2013, the Court set April 30, 2013 as the deadline for filing any further discovery motions (doc. # 1167). At the joint request of the parties, that deadline was extended on several occasions (doc. ## 1200, 1202, 1207 and 1209), with the deadline ultimately being extended to June 21, 2013 (doc. # 1209). The extensions of time were based in part on the parties' representation that they would attempt to resolve as many of their disagreements as possible without the need for motion practice.

We take the parties at their word that they attempted to do so. Nonetheless, the motions to compel filed by the parties on June 21, 2013 (doc. ## 1230, 1237) are akin to the grand finale of a Fourth of July fireworks display. They are supported by the Twenty Sixth Joint Statement ("JS") (doc. #1210), filed pursuant to a protocol set by the Court on September 20, 2010, which is 101 pages long, covers 12 discrete disputes, and is accompanied by more than 200 exhibits.[1]

---

[1]The parties also have filed motions asking that certain of the pleadings associated with the motions and the Joint Statement to be filed under seal (doc. ## 1231, 1238). Those motions are granted.

During a telephone status hearing on June 28, 2013, the Court discussed with the parties a procedure for addressing these motions. We asked the parties to prioritize the portions of the motions they deemed most significant; those are the portions that we address in this opinion. We have set August 5, 2013 as a hearing date for the Court to address the remaining portions of the motions that we do not decide in this opinion (or that we do not separately decide in a written ruling prior to August 5).

## I.

We begin with the portions of plaintiff's motion to compel that it has designated as "high priority" – which are four of the five parts of its motion. We address each of them below.[2]

**B. TT's Request for the Source of Defendants' "Tradepad"-Related Material (JS at 12-17).** Defendants assert that Tradepad constitutes prior art that invalidates the patents that plaintiff claims the defendants have infringed. Plaintiff acknowledges that, pursuant to earlier discovery requests (and rulings by this Court), defendants have produced a "substantial amount" of Tradepad-related material (JS at 12). What plaintiff now seeks is an order compelling defendants to produce a forensic copy of any electronic media which are the source of the Tradepad-related materials that defendants have produced. In particular, plaintiff has identified 28 ranges of Bates numbered documents, totaling 11,535 pages, for which it seeks this additional discovery (Joint Exhibit ("JX") 25). For the reasons that follow, we deny this request.

*First*, plaintiff claims that the forensic copies of the electronic media will contain information beyond the contents of the materials that defendants have produced, such as metadata, which is relevant to whether Tradepad is prior art: such as, when it was created and first distributed (JS at 12-13). However, defendants point out (without contradiction) that when

---

[2]The only portion of its motion that TT did not designate as high priority was its request for supplemental of GL's accused products (JS 8-11 (TT Mot. Part A)).

3

originally requesting this discovery, plaintiff failed to request that the production be made in electronic format (JS at 16). Under Federal Rule of Civil Procedure 34(b)(1)(C), plaintiff could have specified the form in which it wished defendants to produce electronically stored information. Because plaintiff did not avail itself of that right, defendants were free to produce any information that may originate in electronic media "in a reasonably useable form." Fed. R. Civ. P. 34(b)(2)(E)(ii). Plaintiff does not argue that the materials they have received are not in a reasonably useable form; rather, plaintiff says it is entitled to more than it has received. Nearly one and one-half years after the close of non-retained expert fact discovery, we disagree.

*Second*, plaintiff says that this Court's order of December 8, 2011, fills the gap left by its failure to specify the form of production, and requires defendants to produce the source media for the Tradepad-related production (JS at 12). We disagree with plaintiff's reading of that order. In requiring defendants to produce the backup tapes "from other servers," this Court resolved a specific discovery dispute that was presented in a motion filed by plaintiff – a different one than that which plaintiff now presents. We reject plaintiff's attempt to divorce the language of the order from the context of the earlier motion that it resolved.

*Third*, plaintiff argues that recent production by defendants of other backup media with metadata and system information shows the importance of getting this information for the Tradepad-related materials. Plaintiff argues that recent production of other back up media casts doubt on both the completeness of the production of Tradepad-related materials and the accuracy of some of the information in those materials that have been produced (JS at 12-14). Defendants quarrel with plaintiff's characterization of those matters (JS at 16-17). In seeking this information so long after discovery has been closed, plaintiff bears the burden of showing good cause to reopen, expand and prolong discovery. We understand why plaintiff may wish to

have this information; plaintiff has not shown good cause for its failure to seek the information during the more than ample period that was allowed for discovery. Plaintiff's arguments fail to persuade the Court it is appropriate to allow plaintiff to obtain at this late date information it might have sought, but did not seek, during the time allotted for discovery.

   **C. Request for Documents Regarding Other GL Screens from 1998-2002 (JS at 18-23).** On January 18, 2012, this Court granted a request by TT that defendants supplement their previous Tradepad-related production by producing "any manuals, kits, and certification guides associated with any of the product releases prior to 2002, irrespective of whether those documents show a ladder-style screen" (doc. # 768: 01/18/12 Order at ¶ 4). Now, some 18 months later, TT argues that this order requires the Court to compel defendants to "specifically search for and produce code, executables and documents regarding any GL screen from 1998-2002 other than "Tradepad" that had a vertical or horizontal price display" (JS at 19). For the reasons that follow, we deny that request.

   *First*, insofar as this request is premised on the assertion that defendants have failed to comply with that order, TT has failed to persuade the Court that this is so. Indeed, TT appears to concede that defendants are in "technical compliance with their discovery obligations" imposed by the January 18 order (JS at 20). However, TT complains that defendants' searches have been too general, and that they have not looked specifically for the GL screens (*Id.* at 18). However, the Court has previously rejected this same kind of challenge to the adequacy of defendants' search (*see* 03/14/12 Tr. at 17-18; 02/26/13 Tr. at 11-12). Moreover, during the meet and confer that preceded this motion, defense counsel represented that defendants did make specific searches for the subset of materials in the January 18, 2012 order (JS No. 26: JX 4 at 35-36).

We have considered carefully TT's argument, and can find nothing new that persuades the Court to depart from its prior rulings.

*Second*, to the extent that plaintiff's request is a *sub silentio* effort to seek reconsideration and expansion of the January 18 order, that effort is misplaced  After thorough consideration of the arguments of the parties, the Court issued its January 18, 2012 order requiring defendants to search for certain materials and to produce them if located.  When the production did not include what TT hoped for, TT attempted to have this Court expand the scope of what the order required.  We rebuffed that effort in no uncertain terms: "[t]he order is entered.  I've ruled.  I am not going to go back.  As I said, I am not going to expand it.  I'm not going to contract it.  We are at the end" (03/14/12 Tr. at 18).  TT's present request, which seeks production of material plainly not within the scope of the order, flatly disregards that admonition.

We have no doubt that TT would reformulate certain discovery requests if it could do so; we are equally certain that the same could be said of defendants.  However, discovery has now been closed for 18 months.  As the Court made plain in March 2012, there will be no more "do-overs" of discovery in the case; the ability to ask for new and different discovery is a train that has left the station and will not be returning (03/14/12 Tr. at 18).  TT's request is denied.

**D. TT's Request for Production of Non-Party Documents (JS at 24-28).**  During the course of the litigation, defendants have obtained documents from non-parties (one of whom, Marc Nicollet, was formerly an employee).  Defendants have produced those documents that "may be relevant to the claims and/or defenses in the case" (JS at 24).  TT argues that defendants should be required to do more, and should produce (for 15 non parties) "all non-personal material that Defendants have obtained" (JS at 26 and JX 11).

6

TT cites to no discovery request in which they have sought this information. Nor does TT cite authority for the proposition that it is entitled to discovery beyond the claims and defenses in the case, which is what Federal Rule of Civil Procedure 26(b)(1) authorizes a party to obtain. While that rule permits broader discovery on a showing of good cause, TT has not sought or received leave for discovery on that scale.

Instead, TT argues that it should receive all non-personal material defendants obtained from non-parties because defendants are not to be trusted when they say they have produced the materials that may be relevant to the claims and/or defenses in the case. (JS at 24-25). In our judgment, the material that TT cites does not support that accusation that it levels. We deny this request.

**E. TT's Counter-Request for Non-Party Billing Records and Communications (JS at 29-32).** This request was conditional on the outcome of defendants' request for billing records of consultants who also testified as fact witnesses. As we have denied defendants' request (see pp. 12-13, below), we deny TT's request. That said, we note that while TT said that this request was for "similar materials" to those sought by defendants (JS, JX 38), in fact the request far exceeded the request made by defendants. TT's request was excessive, and was made without any explanation that would show good cause. As a result, irrespective of the outcome of defendants' request for billing records, we would have denied TT's request.

## II.

We now turn to defendants' motion. They have designated three of their seven requests as high priority.[3] We address each of those in turn.

---

[3] The portions of their motions that defendants did not designate as high priority are their request for TT's transaction data and financial documents (JS 72-77 (Defs.' Mot. Part C)), TT's responses to defendants' interrogatories (JS 78-83 (Defs.' Mot. Part D)), TT's alleged conceptions, development and reduction to practice of the invention allegedly claimed in the patents-in-suit (JS 84-89 (Defs.' Mot. Part E)), and Harris Brumfield, the

7

**A. TT's Unauthorized Production of Defendants' Documents to CQG (JS 60-65).**

Plaintiff has produced to CQG, a defendant in another patent infringement case filed by plaintiff that is pending before this Court for discovery matters (05 C 4811), certain documents that defendants have produced in this case that have been designated at various levels of confidentiality under the protective order. Defendants argue that this production violates the protective order in this case. As relief, defendants ask that we order the documents that have been produced to CQG returned or destroyed, and that we issue appropriate sanctions against plaintiffs (without suggesting what those should be).

Plaintiffs argue that the production of these documents to CQG was proper for several reasons. We do not find any of them satisfactory.

*First*, plaintiff argues that the production was authorized – indeed, required – by this Court's March 31, 2011 order (doc. # 453). In that order, we addressed the question of whether plaintiffs were required to produce to defendants documents that plaintiff had obtained from eSpeed and various non-parties in connection with plaintiff's suit against eSpeed (No. 04-5312), which was tried in this district in September and October, 2007. We ordered that plaintiffs produce those documents, but subject to the right of eSpeed and the non-parties to make a timely objection if they opposed the production of some or all of the documents.

We find the March 31, 2011 order a slim (to the point of non-existent) reed on which to base the production of defendants' confidential documents and information to CQG. Our order addressed document discovery that took place in the context of coordinated litigation, and that was completed during the time period that this lawsuit, the *eSpeed* case and the *CQG* case were part of that coordinated litigation. We did not address the question of whether plaintiff was at

---

partnership, TTBD, Exchange Connectivity, and communications regarding their patents-in-suit (JS 90-95 (Defs.' Mot. Part F)).

liberty to produce to CQG documents that defendants produced to plaintiff during that coordinated phase. Nor did we address the question of whether discovery that the defendants have provided to plaintiff since September 2010, after the coordinated phase of the litigation ended, should be produced to CQG. Yet, plaintiff took it upon itself to read the order to cover the production – even though CQG itself took the position that our March 30, 2011 order "does not require the production of CQG documents [produced to plaintiff] to other defendants" in any related case (JS, DX 59). In short, the questions of whether plaintiff could produce documents produced by defendants in this case to defendants such as CQG in other related cases, and whether plaintiff could do so only with respect to discovery conducted during the coordinated phase or with all discovery, were not before the Court and were not addressed in the March 30, 2011 order.

*Second*, plaintiff argues that the production was proper under the protective order that governed the coordinated discovery phases of the lawsuits, and that still applies (with some modification) now that the cases have gone their separate ways. The first problem with this argument is that it is not the one that plaintiff offered when defendants first raised this issue. At that time, plaintiff stated that the authority for its production rested on the March 30, 2011 order (JS, JX 37). Plaintiff made no mention of the protective order.

Moreover, the protective order on which plaintiff now seeks to rely is, at best, ambiguous as to whether confidential information produced by defendants to plaintiff in one of the coordinated cases (such as this case) could be shared by plaintiff with defendants in another coordinated case (such as the *CQG* case). The parties have not stated whether that kind of disclosure in fact took place – although the fact that CQG in 2012 sought this information and that defendants object to it having been produced suggests that defendants did not as a matter of

course share with each other the documents they produced to plaintiff during the coordinated phase.

It is even more unclear that the protective order entered while the parties in the related lawsuits were in a coordinated phase contemplated that, once the cases were separated, plaintiff was at liberty (and without notice) to provide documents produced by a defendant in one case to a defendant in another case. Certainly, the protective order does not explicitly authorize that kind of disclosure; and in our judgment, it does not do so implicitly.

*Third*, plaintiff says that it informed defendants that plaintiff planned to produce its discovery to CQG if defendants did not object, and they never objected – until well after the production was made. This is indisputably correct. On May 31, 2012, plaintiff notified defendants that it would be making the production to CQG unless there was an objection by June 7, 2011 (JS, DX 58). Defendants concede that they did not respond to the letter, but blames that on plaintiff directing the letter to the wrong people (JS at 62 and n.36). We find that argument unconvincing, as the people to whom the letter was directed are (a) the person identified as the contact person on the protective order and (b) lead counsel for defendants who has demonstrated that he is attentive to every detail of what goes on in this case. What is more likely, in our judgment, is that given all of the many activities going on in the case simultaneously, this letter simply "fell through the cracks" (JS, JX 1 at 28).

That leads to the question of why, when there was no response to the letter, plaintiff did not follow up with a phone call or another email – and, to be sure, the parties exchange many of both. Defendants raise this point (JS 62 n.36), and it is a fair one for defendants to raise. Plaintiff's production of defendants' confidential documents to CQG, a competitor, is no small matter. Of course, defendants should not be allowed by their silence to frustrate plaintiff (and

CQG) from knowing whether defendants objected to the document production. However, it was not too much to ask of plaintiff's counsel to make some effort to follow up. Plaintiff should not have made that production based on defendants' failure to respond promptly to a letter, without a follow up to ensure that the silence was indeed acquiescence and not merely an oversight.

For these reasons, we conclude that plaintiff was not authorized to provide to CQG the discovery that defendants produced to plaintiff. That said, we disagree that plaintiff's counsel should be sanctioned. Plaintiff's counsel may have assumed that the silence in response to the May 31 letter was agreement, particularly since defense counsel during the hearing that preceded the March 31, 2011 order suggested that the issue was not limited to the *eSpeed* case but also to "any number of other cases that were before the Courts here" (JS, JX 12 at 35). As we explained above, the assumption nonetheless should not have been made. But, while we do not endorse the conduct here, we do not find that it warrants sanctions. We do admonish plaintiff's counsel that their conduct in connection with this production issue is not how we expect skilled professionals (which they surely are) to treat opposing counsel.

In addition, we conclude that a blanket order requiring return or destruction does not make sense at this time. Rather, we order that by July 29, 2013 (to the extent that it already has not done so by the letter that is JX 36), plaintiff shall provide defendants with a comprehensive list of all discovery material produced by defendants in this case that has been turned over to CQG. Thereafter, the parties (in consultation with CQG) shall meet and confer about the production. This will give defendants an opportunity (albeit belatedly) to do what the defendant and the third-parties in *eSpeed* had a chance to do: identify any particular documents or other information that they object to having plaintiff produce.

11

We expect that there may be many documents among the production that, on reflection, defendants will not object to CQG possessing. There may be certain distinctions to be made between certain discovery obtained from the period during coordinated proceedings, and discovery obtained once the cases were separated for discovery. As we have indicated in the past, there are economies and other advantages to be obtained by the sharing of certain discovery across cases without the need for issuance of subpoenas. And, CQG has had the discovery produced by defendants in this case for some time, and may have relied on it in fashioning case strategy. We do not see why CQG should be blamed for the conduct here of plaintiff's attorneys.

These all are factors that the parties in this case (in consultation with CQG) should consider in attempting to fashion a resolution that protects defendants' legitimate interests in confidentiality without causing unfair prejudice to CQG. By no later than August 19, 2013, the parties shall file a written report on their efforts to resolve this issue.

**B. Billing Records of Consultants Who Also Testified As Fact Witnesses (JS 66-71).** On February 26, 2013, this Court granted plaintiff's motion to compel the production of billing records of defendants' consultant, Patricia LaCoste, whom defendants wish to offer as a fact witness (doc. # 1164: 02/25/13 Order at ¶ 3(a)). Defendants now ask that this Court order plaintiff to produce billing records of consultants retained by plaintiff or its counsel who also have testified as fact witnesses (JS at 66). Defendants contend that there are nine such persons (JS, JX 37). TT opposes that request, but argues that if it is granted, then it should receive the billing records of at least 40 persons if they received any compensation in connection with this case or *eSpeed* – irrespective of whether they consulted for defendants or their counsel, and any other communications with any non-party who produced documents or testified in this case or in *eSpeed* (JS, JX 38).

While the parties trade barbs and offer a variety of arguments in support of their respective positions, we focus on the simple and indisputable point that discovery in this case closed as of February 1, 2012, and thus has been closed for nearly 18 months. For this Court to belatedly allow the discovery defendants seek, we would need a showing of good cause – and defendants have provided none.

Defendants have not pointed to a timely served discovery request seeking this information. And, even if they had done so, defendants have no good explanation for seeking this information so late in the day. They point to the Court's February 26, 2013 order requiring defendants to produce this information for Ms. LaCoste, but without acknowledging that this followed upon a deposition that (by agreement) was taken in November 2012, after discovery closed and shortly before TT filed the motion seeking that information.

By contrast, TT has offered evidence that defendants long have known that the nine persons for whom they seek this information were consultants (or former employees) of TT. Five of those persons were deposed in *eSpeed* by 2007 (Friesen, Kemp, Mauro, Schluetter and Warner) (JS, PX 45); two of those five (Friesen and Kemp) were identified on a June 2011 log as consultants and were further deposed in this case in the fall of 2011, prior to the close of discovery (*Id*, PX 45, 46); and three others of the nine (Hart, Cooper and Biddulph) were also listed on the June 2011 log as consultants (*Id.*, PX 46). The sole remaining person on defendants' list (Rivero) was deposed in January 2012 (JS at 69 n.46).

Defendants say that they requested this information for some (but not all) of these individuals at their depositions (JS, JX 39 at 2). But, defendants noted that some of those requests were at depositions in 2006 and 2007 in *eSpeed*, and all of the requests they have cited occurred in depositions taken prior to the close of discovery. Defendants' failure to pursue the

matter for more than a year after the close of discovery is not good cause to reopen discovery so defendants can seek what they could have requested earlier if they deemed it important to do so. This request is denied.

### G. Trading Records and Trading Videos of Harris Brumfield (JS 96-101).

Defendants request the production of trading records that they claim Mr. Brumfield improperly failed to produce pursuant to a subpoena served in 2006. That request is grossly untimely, and for that reason alone, is denied. Discovery in this case closed at the end of January 2012. Defendants had more than enough time during the period allotted to discovery to seek these records if they believed that Mr. Brumfield had withheld documents that should have been produced.

Defendants' request that Mr. Brumfield be compelled to produce videotapes of trading activity on 30 different days in 1999 and 2000 (JS, JX 71) fares no better. In the Spring and Summer of 2012, we devoted considerable time to defendants' request to inspect the entirety of the videotapes from which Mr. Brumfield had produced excerpts as part of the *eSpeed* case. The stated purpose of that review was to verify that the excerpts were complete (doc. # 963: 06/05/12 Order at 2). Upon review, there was further dispute and motion practice as to whether other portions of the videotapes should be produced – which the Court addressed initially (doc. # 1112: 01/02/13 Order) and then again on reconsideration (doc. # 1164: 02/26/13 Order).

At no time did defendants seek to compel an inspection of the videotapes they now seek. We are not persuaded by defendants' argument (JS at 98) that the reason for this failure to seek an inspection earlier is because defendants were unaware that other videotapes might exist. We are persuaded by the materials submitted to the Court that defendants knew (or should have known) that other videotapes existed. The Court's indulgence in allowing the parties after the

14

close of discovery to follow up on "tag ends" was not a license to embark on new discovery that defendants failed to timely seek. The request for an inspection of additional videotapes is denied.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: July 25, 2013

15